1   ROBERT S. BREWER, JR. (SBN 65294)
    E-mail:  rbrewer@mckennalong.com
2   ROBERT J. LAUCHLAN, JR. (SBN 118545)
    E-mail:  rlauchlan@mckennalong.com
3   GARY K. BRUCKER, JR. (SBN 238644)
    E-mail:  gbrucker@mckennalong.com
4   MCKENNA LONG & ALDRIDGE LLP
    750 B Street, Suite 3300
5   San Diego, CA  92101
    Telephone:     (619) 595-5400
6   Facsimile:     (619) 595-5450

7   Attorneys for Defendant
    MICHAEL T. UBERUAGA

8
                **UNITED STATES DISTRICT COURT**
9
                **SOUTHERN DISTRICT OF CALIFORNIA**
10

11
    SECURITIES AND EXCHANGE            CASE NO.  08-CV-0625-DMS (LSP)
12  COMMISSION,
                                       **DECLARATION OF NANCY SCOTT**
13               Plaintiff,            **IN SUPPORT OF MICHAEL T.**
                                       **UBERUAGA'S MOTION TO DISMISS**
14       vs.                           **THE COMPLAINT**

15  MICHAEL T. UBERUAGA, EDWARD P.     Date:      November 7, 2008
    RYAN, PATRICIA FRAZIER, TERESA A.  Time:      1:30 p.m.
16  WEBSTER, and MARY E. VATTIMO,      Judge:     Hon. Dana M. Sabraw
                                       Ctrm:      10
17               Defendants.

18

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Declaration of NANCY SCOTT:

2          1.     I, Nancy Scott, am over the age of 18.  Except as to those facts stated upon

3    information and belief (which facts I believe to be true), I have personal knowledge of the facts

4    stated herein and, if called as a witness, would testify competently thereto.

5          2.     On or before May 22, 2008, I received from the City of San Diego, City Clerk's

6    Office, an official audio record of the May 13, 2008 City of San Diego City Council meeting.

7    Upon information and belief, a true and correct copy of this audio record is attached as **Exhibit 6**

8    to Defendant Michael T. Uberuaga's concurrently filed Request for Judicial Notice in Support of

9    His Motion to Dismiss.  Copies of the official audio record are also available for purchase from

10    the City of San Diego, City Clerk's Office.

11          3.     On May 22, 2008, to the best of my ability to hear and understand the audio record

12    described in paragraph 2 to this declaration, I transcribed the portions or the record that discussed

13    Agenda Item 330.  The transcript that I prepared is as follows:

14    Peters:     Alright, ladies and gentlemen we are ready to reconvene and come to order.  I'll

15                 ask the Clerk to call the role.

16    Clerk:      Council member Faulconer, Council member Atkins, Council member Young,

17                 Council member Maienschein, Council member Frye, Council President Pro Tem

18                 Madaffer, Council member Hueso, Council President Peters.

19    Peters:     Here.  We have two matters left over from the morning.  Item 330 is the City

20                 Attorney in the matter of whether to provide for the defense of defendants in the

21                 Securities Exchange Commission case. Madam City Attorney do you have any, or,

22                 Mr. Goldstone, do you want to comment on this?

23    Goldstone:   Just real briefly, this is a pretty straightforward item.  There are five former city

24                 employees who have now been charged civilly, and we believe that anytime

25                 there's been civil charges filed by a regulatory agency, and in this case the SEC,

26                 which claims recklessness on behalf of employees, that we should no longer front

27                 the cost for their defense.  Should they be found innocent at some point in time,

28                 then they can always come back to the City, but at this point, we feel that the

| | | |
|---|---|---|
| 1 | | taxpayers have paid enough, and that the individual employees should cover their |
| 2 | | legal fees from this forward on. |
| 3 | Peters: | Alright. Madam City Attorney, do you have anything further? |
| 4 | Heumann: | Yes, I have Deputy City Attorney Joe Cordileone who I think has a short |
| 5 | | presentation or explanation. |
| 6 | Peters: | All right. Go ahead, sir. |
| 7 | Heumann: | And then you also should have a memo, Consideration of Whether to Provide a |
| 8 | | Defense. It discusses conflicts of interest and the rule of necessity. And also my |
| 9 | | understanding is the City Attorney is going to be over here to comment, but if we |
| 10 | | could just take Mr. Cordileone's comments and maybe public comments, maybe |
| 11 | | Mr. Aguirre will be here then and can speak additionally. |
| 12 | Cordileone: | Thank you. I can, I have very little to add to the memo. I think that the, I certainly |
| 13 | | support the recommendations that are in there, and that, at the very least it would |
| 14 | | be premature to pay them now when the complaint itself has these allegations of |
| 15 | | fraud or deceit. Other than that, if the Council has any questions, I can answer |
| 16 | | them with respect to what happened in prior lawsuits where there was a finding |
| 17 | | that the City had to pay because there had been no finding by the City under |
| 18 | | Government Code section 955.2. |
| 19 | Peters: | Alright. There are no public speakers. Mr. Madaffer. |
| 20 | Atkins: | Wait. Before . . . |
| 21 | Peters: | Oh I'm sorry. |
| 22 | Atkins: | Before you get to the discussion I need the attorney to comment on the memo, so I |
| 23 | | can determine whether I'm going to be here or not. |
| 24 | Peters: | Ms. Atkins. |
| 25 | Heumann: | Yes. We were, I was just about to discuss that. As outlined in the memo, we |
| 26 | | would need to apply the rule of necessity in order to have the participation of a |
| 27 | | quorum of the council members. |
| 28 | Peters: | It depends on how many people actually recuse. |

| | | |
|---|---|---|
| 1 | Heumann: | Yes, right, if in fact we have too many that are intending to recuse in this matter. |
| 2 | | As outlined in the memo there is . . . |
| 3 | Maienschein: | Ms. Heumann, Ms. Heumann.  Maybe, just if I could just interject for a second. |
| 4 | Heumann: | Yes. |
| 5 | Maienschein: | Maybe just see if the council members have questions.  For example, I assume |
| 6 | | everybody has read the memo. |
| 7 | Heumann: | Okay. |
| 8 | Maienschein: | Maybe Ms. Atkins has questions and then she could just ask them. |
| 9 | Heumann: | Okay. |
| 10 | Cordileone: | Maybe Mr. Madaffer wanted to comment about that recusal issue as well. |
| 11 | Peters: | Well, everyone's here.  On the recusal I think we should take that up first.  Does |
| 12 | | anyone want to make a statement about recusal? |
| 13 | Madaffer: | Yes. |
| 14 | Peters: | Ms., Ms. Atkins would you like Mr. Madaffer to go first? |
| 15 | Atkins: | It's to the issue of recusal? |
| 16 | Peters: | Yes.  Recusal. |
| 17 | Atkins: | Okay.  Then go ahead Mr. Madaffer.  I'm prepared to wait. |
| 18 | Madaffer: | I mean if you want to go, go ahead.  I'm just following the lecture. |
| 19 | Peters: | She just wants to make sure we are not talking about the item . . . |
| 20 | Madaffer: | Go ahead, please.  I'll wait. |
| 21 | Peters: | . . . before she has  a chance to decide whether to recuse.  Go ahead.  Mr. |
| 22 | | Madaffer. |
| 23 | Madaffer: | Okay, in the matter of the recusal.  The issue that I have, I totally disagree with the |
| 24 | | City Attorney.  I actually would rather have this conversation, if the City Attorney |
| 25 | | is going to be late, then call a ten minute recess or have somebody else talk |
| 26 | | because I'll have to just repeat myself all over again, because he's never here on |
| 27 | | time. |
| 28 | Peters: | When will he be here? |

| | | |
|---|---|---|
| 1 | Madaffer: | It's supposed to start at 2:00 and it's 2:10, 2:12. |
| 2 | Peters: | You know? Do you have any . . . You don't know? Okay. All right, so. |
| 3 | Madaffer: | I'll probably, forgive me, my colleagues. I may have to restate the same things |
| 4 | | again. The inconsistency with selective legal advice is what bothers me. When |
| 5 | | this City Council voted to provide legal indemnification for other city employees, |
| 6 | | whether it provided legal indemnification or coverage even for ourselves, what we |
| 7 | | did is we simply, based on 1090 concerns, if it would have involved myself for |
| 8 | | example, I stepped off the dais and did not participate in the vote. In this situation |
| 9 | | the City Attorney is recommending that the rule of necessity be invoked. I guess |
| 10 | | the question is, why wasn't the rule of necessity invoked then? What has |
| 11 | | changed? There is nothing that has changed. This is the same thing. In fact there |
| 12 | | is even less of a situation that there is a 1090 matter because it doesn't involve any |
| 13 | | of us individually. So to get this legal opinion, late yesterday again, once again, |
| 14 | | and the absolute inconsistency, Ms. Heumann, how can on one hand the City |
| 15 | | Attorney have us vote for attorney coverage for individual city council members, |
| 16 | | and that was okay as long as we recused ourselves individually, but now because it |
| 17 | | involves Ed Ryan or any of these other folks, we have to somehow or another |
| 18 | | invoke the rule of necessity? |
| 19 | Cordileone: | It's, I, you have a good question. Typically I do not deal with the more political |
| 20 | | issues. I focus on the . . . |
| 21 | Madaffer: | It's not political. It's a simple legal question, Mr. Cordileone. Whether or not . . . |
| 22 | | what's changed, I guess, is the question between then and now. |
| 23 | Cordileone: | I think the immediately apparent change is the fact that these, the current council |
| 24 | | members that are identified in the memo have been the subject of the SEC |
| 25 | | investigation. |
| 26 | Madaffer: | Weren't they before? |
| 27 | Cordileone: | There was an SEC investigation and it's an SEC complaint which was not the case |
| 28 | | other . . . |

| | | |
|---|---|---|
| 1 | Madaffer: | Weren't they before though? |
| 2 | Cordileone: | Certainly. |
| 3 | Madaffer: | So what's the difference? |
| 4 | Cordileone: | The difference is, in none of the previous lawsuits was it an SEC complaint that |
| 5 | | had been filed. That was the difference. In this case, it is the same subject, the |
| 6 | | subject matter that is, the SEC having conducted its investigation has then filed its |
| 7 | | lawsuit against these individuals. There is the potential that that same SEC with |
| 8 | | further investigation may file its lawsuit against certain council members. |
| 9 | Madaffer: | Didn't that potential exist before? |
| 10 | Cordileone: | Right. But . . . |
| 11 | Madaffer: | Then what's the difference? |
| 12 | Cordileone: | The other lawsuits were lawsuits involving, that did not deal with an SEC |
| 13 | | investigation. If you are looking specifically at the SEC investigation . . . |
| 14 | Madaffer: | Hasn't there been just one SEC investigation? They had claims versus the City, |
| 15 | | which we've settled in a stipulated settlement, of which we now have a monitor for |
| 16 | | three years, blah, blah, blah. And then there was the other people. And it seems to |
| 17 | | me as though the SEC has charged five individuals civilly, of which we, they're |
| 18 | | the subject of this issue, and yet council members who were also afforded |
| 19 | | protection have not been. So what is the difference between that vote that we took |
| 20 | | when we paid for our own legal counsels versus today? |
| 21 | Cordileone: | The difference is, there was no allegation in the earlier investigation of behavior |
| 22 | | that would be exempted under 955.2. In this new complaint which has been filed, |
| 23 | | there is allegations under Government Code section 955.2 which are different from |
| 24 | | the mere fact of the investigation. Because those charges exist, the |
| 25 | | recommendation is that these individuals not be afforded a defense. And the issue |
| 26 | | is because the council members were also the subject of the investigation, there is |
| 27 | | the potential that charges will be filed against them under the same complaint or |
| 28 | | related to the same complaint. |

| | | |
|---|---|---|
| 1 | Madaffer: | Isn't that more conjecture on your part? |
| 2 | Cordileone: | There is a potential. That's, you can call it conjecture, that's either way it's the |
| 3 | | same thing. |
| 4 | Madaffer: | Do you have any facts or proof otherwise that individual council members are |
| 5 | | going to be charged by the SEC? |
| 6 | Cordileone: | We have no facts that anybody was going to be charged. We do, we do know that, |
| 7 | | that somebody . . . |
| 8 | Madaffer: | And did you then when we made prior votes? |
| 9 | Cordileone: | . . . some individuals were charged. |
| 10 | Madaffer: | When we made prior votes you didn't have any information either, did you? I'm |
| 11 | | just trying to understand what has changed other than the fact that maybe there is |
| 12 | | an election for City Attorney or there is new politics involved that would cause the |
| 13 | | City Attorney's office to put out a memo that would try to play this game of rule of |
| 14 | | necessity in this situation where it didn't take place in a prior situation. And so far |
| 15 | | of what you've described to me just because the SEC has placed charges, it wasn't |
| 16 | | placing charges on me or any members of the City Council. It was on five |
| 17 | | individuals that are former employees of the City of San Diego. |
| 18 | Cordileone: | The answer to your question is, at the time that the SEC was conducting the |
| 19 | | investigation, there was no charge of anybody having done any, any wrong-doing. |
| 20 | Madaffer: | Okay. With that being said . . . |
| 21 | Cordileone: | Alright. Now if there is something . . . Can I finish the answer? |
| 22 | Madaffer: | Please. |
| 23 | Cordileone: | Okay. Since that time with the same investigation the SEC has filed a different |
| 24 | | lawsuit. The allegations of that new lawsuit include allegations that under |
| 25 | | Government Code section 955.2 would, the City Council would deny those |
| 26 | | individuals a defense. And in, because of the potential, with, you look at the |
| 27 | | language of the Kroll Report that has council members being accused of negligent |
| 28 | | conduct, and Mr. Uberuaga being accused of negligent conduct, and then now |

| | | |
|---|---|---|
| 1 | | Mr. Uberuaga has been sued based on that conduct, and accused of having done |
| 2 | | something intentionally deceitful, where 955.2 says the City Council doesn't have |
| 3 | | to pay. There is that potential that the City council members who were involved |
| 4 | | may be charged. |
| 5 | Madaffer: | Okay, Mr. Cordileone I appreciate that. And I know Mr. Aguirre just arrived and |
| 6 | | I, for your benefit will probably restate the question. But when I read 995.2 it says |
| 7 | | that the individual would have had to acted or failed to act because of actual fraud, |
| 8 | | corruption, or actual malice. Now, wouldn't the court of law first have to |
| 9 | | determine that, under 995.2 before in fact it would be factual? |
| 10 | Aguirre: | Well, no. |
| 11 | Madaffer: | Why not? |
| 12 | Cordileone: | Well, because . . . |
| 13 | Madaffer: | Because you can't just accuse somebody. |
| 14 | Aguirre: | Well, as I say it would depend. For example the City . . . |
| 15 | Madaffer: | Well I'm just reading from the Code, Mr. Aguirre. |
| 16 | Aguirre: | Right. What . . . The standard you have read is the correct standard. But let's |
| 17 | | give you an example. The City itself has conducted an internal investigation, and |
| 18 | | it hired Kroll headed up you know by an investigative team to look into that issue, |
| 19 | | and with regard to their conclusions, they said that, with regard to the City's |
| 20 | | unlawful financial disclosures we believe the evidence supports the determination |
| 21 | | that the following city representatives acted with wrongful intent, scienter, which |
| 22 | | would be fraud, and then it describes Pat Frazier, Mary Vattimo, Ed Ryan, Terri |
| 23 | | Webster, Larry Grissom, Dennis Kahlie, William Hanley and Kelly Salt. Now the |
| 24 | | City itself has to make judgment calls about things every single day. And one of |
| 25 | | the ways the City can go about doing that is by retaining or using the City |
| 26 | | Attorney or using some fact-finding entity or person, and, to inform itself so it can |
| 27 | | make an appropriate judgment. There's, the taxpayers don't have to pay money if |
| 28 | | somebody has in fact defrauded the taxpayers or defrauded the City, and the City |

1    has the ability to make a judgment call in that. And so that is basically what has

2    happened here. The people that are being charged by the SEC concur with the

3    decision made by the City's outside firm that in fact these individuals have

4    committed fraud. So then the question becomes, why should the taxpayers have to

5    pay the fraud? Now in your instance and what you are talking about here and the

6    concern is this . . .

7    Madaffer:    No, Mr. Aguirre. Let me just, let me just interject. I don't, to the benefit of my

8    colleagues, before you got here, and I want to get to 995.C, because I think that's

9    an important element that needs to be discussed here, but I think what Mr. Peters

10    was allowing the discussion to take place first, is whether or not . . .

11    Aguirre:    Right.

12    Madaffer:    . . . the matter of the rule of necessity need to be invoked.

13    Aguirre:    Yes, (inaudible) . . .

14    Madaffer:    And so the question becomes what has changed today regarding council members

15    where, when we were sitting here as possible, potentially for being charged by the

16    SEC, the City of San Diego provided myself, along with my colleagues, taxpayer-

17    funded lawyers for the purpose of the SEC investigation, your advice at that time

18    was is that to avoid a conflict under section 1090 of the Government Code, that we

19    would simply recuse ourselves each and individually from the vote. So I would

20    step off the dais and my colleagues were able to vote, and I was able to have legal

21    coverage paid for by the City. Now that took place, each of us got that with the

22    exception of course of Ms. Frye who provided her own. That being said, that's

23    when we were much more under a microscope. Now today we find ourselves not

24    even the subject to this issue whatsoever. We are not even talking about ourselves

25    individually, and yet you've now come out with some kind of an opinion stating

26    that somehow we must roll the dice and play the rule of necessity. And I just don't

27    see any legal basis on that under section 1090, which is what the rule of necessity

28

| | | |
|---|---|---|
| 1 | | involves. So I would like an explanation on that in the clearest possible terms so |
| 2 | | we can move on from this. |
| 3 | Aguirre: | Well, right. Here's, here's the idea. The idea of the rule of necessity arises from |
| 4 | | the fact that an individual, Mr. Uberuaga, who as the council members were by |
| 5 | | Kroll found to have acted negligently, has actually moved from being negligent |
| 6 | | into a category of being reckless or knowing by the SEC, which then opens up the |
| 7 | | possibility that that same evolution could take place with regard to a |
| 8 | | councilmember. And so the idea is if you're making the judgment call that |
| 9 | | establishes a clear precedent on the part of the City that someone . . . Let's put it |
| 10 | | this way. Under 1090 you get, you get pulled in two directions. On the one hand, |
| 11 | | you may feel in the interest of the City, it's in the best interest of the City not to |
| 12 | | pay these individuals, and so that is your fiduciary duty to the City. On the other |
| 13 | | hand, you may feel that you could be in the same situation as one of these |
| 14 | | individuals, and I'm not suggesting that the council members will be, but you |
| 15 | | could be in the same situation as one of these individuals, and so your own |
| 16 | | personal interest might pull you in that direction. What 1090 prohibits is putting |
| 17 | | yourself in that or allowing yourself to be put in that position. And in this case |
| 18 | | you're not doing either. You're not intentionally doing it, but you're just finding |
| 19 | | yourself in the position where you are getting pulled possibly in two different |
| 20 | | directions. That is what 1090 addresses. And so what we are suggesting is just to |
| 21 | | make sure that you are covered, just to make sure that you know that you don't |
| 22 | | have a problem, that it gives you protection so that if you do it under the rule of |
| 23 | | necessity, then the 1090 issue goes away all together. So it is being done for your |
| 24 | | protection. It is not being done to embarrass or to annoy or harass you, but it |
| 25 | | strictly, and if you might recall, we did the same thing in closed session with, with |
| 26 | | the rule of necessity regarding a somewhat related matter as well. |
| 27 | Madaffer: | Well, Mr. Aguirre I appreciate that. I just do not think you have made a |
| 28 | | compelling argument as to why I would have to be exempted from a decision that |

1   doesn't even involve me under Government Code 1090, when Government Code

2   1090 specifically states that I shall not be financially interested in any contract

3   made by myself in my official capacity, or any body or board to which I'm a

4   member. And this is a case that involves five individuals, none of whom are me,

5   therefore I should be able to vote on this item. And the fact that you specifically

6   did not cite this issue in a previous vote that was held not once, but twice, but at

7   least three times, where the City Council was provided legal protection for council

8   members which they were much more subject to potential of a 1090 issue in that

9   situation and so therefore we were recused, I don't see how you can meet, you

10  failed to meet the standard to which 1090 would be employed, and I just want to

11  state for the record that, while I appreciate your memorandum and while I

12  appreciate your advice, I believe that I am completely within my right to sit here as

13  a member of this legislative body with no conflict whatsoever under the action that

14  is noticed and docketed before us and therefore can vote.

15  Aguirre:    And I would just say this, that if we were, if we were to do this again as far as the

16  other matter that you talked about, I would reach the same conclusion. I would say

17  that this is a procedure that given the seriousness of a actual, you know, charges

18  now being filed by the Securities and Exchange Commission, and we are moving

19  beyond just an investigation, but you actually have charges filed or a case brought,

20  that I think that we just, we, you know, I'm heightening the protection for the

21  council members. And again, it's not, it's something that's being done, the 1090

22  deals with direct or indirect, direct or indirect, and so we see this as a potential

23  problem, and I would say that, that you know the reality of it is, is that it's being

24  done for your protection. You know, if you choose not to follow the advice that's

25  your choice, but I'm just saying that I think it's the more prudent thing to do, to

26  make sure that you know you don't even have a arguable 1090 problem. That way

27  you take yourself out of it all together.

28

| | | |
|---|---|---|
| 1 | Peters: | Thank you. I think it's a fair question to raise. If I might, Ms. Atkins, do you |
| 2 | | mind if I just give a little reaction, introduction to this? |
| 3 | Atkins: | No, I don't mind. |
| 4 | Peters: | I thought, I think it's a, it's a question to raise. I guess I just offer a few things. |
| 5 | | The reason why I think it is appropriate for me at least to participate is the, we did |
| 6 | | a number of things to try to find out what, what went wrong at the City. We did a |
| 7 | | Vinson & Elkins Report. We did a Kroll Report to follow on that. Spent a lot of |
| 8 | | money to try to get, get it right. And Mr. Aguirre also did an extensive, couple of |
| 9 | | interim reports at least, and I don't remember how many, but there were at least a |
| 10 | | couple on the same issues. The SEC had all that information. They chose to, they |
| 11 | | chose to, to, to charge five people, and obviously declined to proceed with |
| 12 | | anybody else, so, I'm comfortable. Also I know, and Mr. Aguirre doesn't have the |
| 13 | | benefit of the interaction that we've had with the regulatory agencies, we know |
| 14 | | that that's not an issue for us, and so that, that would be a reason why it would be |
| 15 | | appropriate for us to participate, and there is no reason why Mr. Aguirre should |
| 16 | | know that, so . . . |
| 17 | Aguirre: | Well the only thing I would say there though, is, Mr. Peters, is this, that the, what |
| 18 | | the SEC has said publicly is that their case is proceeding, that their investigation is |
| 19 | | proceeding. And if that is the case, I want to make it really clear, it's not a |
| 20 | | question of having done investigations, it's not a question of what I'm suggesting |
| 21 | | is that you are doing something wrong. What 1090 gets at, is actually just putting, |
| 22 | | being in the position of getting torn in two ways. |
| 23 | Peters: | Right. I understand. |
| 24 | Aguirre: | In other words just by sitting here right now, you're sitting here right now, on the |
| 25 | | one hand you know, you may favor the idea of helping these people because you |
| 26 | | could be in a similar situation, so you're torn in that direction, or, you're in a |
| 27 | | situation where you're, you're, you may say, I don't want the taxpayers to have to |
| 28 | | |

| | | |
|---|---|---|
| 1 | | pay for this, this isn't right.  So just the fact of being in that position, not that, not |
| 2 | | that, you may make the right decision.  You may vote against it. |
| 3 | Peters: | Right. |
| 4 | Aguirre: | That would still potentially be a 1090 violation because that's what it prohibits. |
| 5 | | You don't, they don't even want you to be in that position. |
| 6 | Peters: | No, I'm aware of 1090 and I appreciate your, your, your advice and that's why I'm |
| 7 | | comfortable proceeding.  Ms. Atkins? |
| 8 | Atkins: | Thank you.  I certainly appreciate the logic that Mr. Madaffer has put forward.  It's |
| 9 | | compelling.  Mr. Peters, your comments are as well.  But I'm just going to say in |
| 10 | | an abundance of caution I'm going to recuse because I don't know, and I am not |
| 11 | | an attorney, and while the logic that I've heard today, and it's a great, it's a good |
| 12 | | legal discussion, but given that, you know I have to either choose to vote or not, |
| 13 | | I'm looking at the opinion of the attorney and at this point I feel more comfortable |
| 14 | | personally recusing, and I am going to do that. |
| 15 | Peters: | Okay.  Ms. Atkins will leave the room.  Ms. Frye? |
| 16 | Frye: | And I will also be recusing myself.  If someone offers me additional protection and |
| 17 | | there is, you know, the, the case where I could or could not have more protection, |
| 18 | | I'll err on the side of more protection. |
| 19 | Peters: | Alright.  Anyone else?  All right we appear to continue to have a quorum so let's |
| 20 | | now deal with the item.  I'll clear the lights. |
| 21 | Madaffer: | I would like to go first. |
| 22 | Peters: | Mr. Madaffer. |
| 23 | Madaffer: | Thank you very much, Mr. Peters.  You know, I believe this whole issue on 995 |
| 24 | | and I've spent a lot of time studying it and getting a good understanding on it. |
| 25 | | You know it exists because government employees that are in government jobs |
| 26 | | have this protection.  The state legislature gave them this protection so they would |
| 27 | | not be held personally liable.  Whether it's a lawyer, doing their job as a lawyer or |
| 28 | | what have you, it gives them peace of mind that their actions in their job are free |

| | |
|---|---|
| 1 | of personal liability.  And at the same time, you see that 995 has to strike a balance |
| 2 | between providing a standard that government employees are entitled to |
| 3 | indemnification, but as, getting to the point that Mr. Aguirre's made, it should not |
| 4 | give them protection for improper conduct.  And I guess a question and maybe I |
| 5 | could ask you this, Mr. Aguirre, as I kind of walk through an iterative process, |
| 6 | because I've spent a lot of time thinking about this and I actually don't have a |
| 7 | solid mind made up right now on where I am on the protection for these five |
| 8 | individuals.  I will say that.  I wanted to hear my colleagues because it's, there is a |
| 9 | lot of pros and there's a lot of cons.  I guess the first question I would ask you, |
| 10 | Mr. Aguirre, as I look in Government Code 995.2, it says, he or she acted or failed |
| 11 | to act because of actual fraud, corruption or actual malice.  And while that makes |
| 12 | sense, you then get into section 3(c), and it says if an actual and specific conflict of |
| 13 | interest becomes apparent, subsequent to this twenty-day period following the |
| 14 | employee's written request for defense, this is assuming we decline the defense, |
| 15 | nothing herein shall prevent the public entity from refusing to provide further |
| 16 | defense to the employee.  The public entity shall inform the employee the reason |
| 17 | for the refusal to provide defense.  So I guess what happens is, is, and the question |
| 18 | I have to you is, do these five individuals or any of them individually, do they |
| 19 | meet the standard for indemnification?  Yes or no. |
| 20 | Aguirre:  Well, I think that there is four and one.  And I'm operating off of the, and there is |
| 21 | one other point I want to make sure because I need to raise this because I forgot to |
| 22 | raise this point as well.  There's, the, Mr. Uberuaga has been found to be |
| 23 | negligent, so essentially the City, the City's attorney . . . |
| 24 | Peters:  Charged with negligence. |
| 25 | Aguirre:  No, no, no, no, no.  He's been found by Kroll . . . |
| 26 | Peters:  Well, that's not a tribunal, but he's been charged with negligence. |
| 27 | Aguirre:  Well, that's, no, no, no.  You don't understand.  The City itself, no, the City itself |
| 28 | for City purposes has hired someone to make a determination as required by the |

| | | |
|---|---|---|
| 1 | | illegal acts investigation. The City has determined through their lawyer that |
| 2 | | Mr. Uberuaga acted negligently. That's a, that's a factual finding. |
| 3 | Madaffer: | But Mr. Aguirre that wasn't a judicial determination in a court of law. |
| 4 | Aguirre: | It doesn't have to be. It doesn't have to be a judicial determination, for purposes |
| 5 | | of the Council decision-making. For purposes of the Council's decision-making, |
| 6 | | Mr. Uberuaga was found to be negligent. Now negligent is a, it is a species, a |
| 7 | | subset of fraud, but it is of a different nature than what is the situation with Frazier, |
| 8 | | Vattimo, Ryan and Webster. They have been found, it says with regard to the |
| 9 | | City's unlawful financial disclosures, we believe the evidence supports the |
| 10 | | determination, that the following City representatives acted with wrongful intent, |
| 11 | | i.e., scienter. So that's outright fraud. So for purposes of our decision making. |
| 12 | | Now one other thing I need to make sure you understand as well, for purposes of |
| 13 | | just the recusal issue. If in fact the council members have an interest in proving |
| 14 | | that what the SEC is attempting to prove, the council members, certain council |
| 15 | | members have an interest in not having the SEC prove that. Again, you're placing |
| 16 | | yourself in a situation where on the one hand, you want to show that there was no |
| 17 | | securities fraud to begin with, which is what these defendants want to show, and |
| 18 | | that's turning you in one direction. And on the other hand, the City's interest may |
| 19 | | be completely different than that. They may want to have a determination one way |
| 20 | | or the other made about whether there was securities fraud, particularly since you |
| 21 | | know we have entered into a similar resolution with the, with the, with the SEC, |
| 22 | | and there could be certain legal consequences with regard to these individuals if, if |
| 23 | | they're found not have committed securities fraud. So that's another aspect of the |
| 24 | | recusal that you need to consider beyond just the the, the payment of legal fees. Now, |
| 25 | | going back to your question though . . . |
| 26 | Madaffer: | Do they meet the standard for indemnification? That was my question. |
| 27 | Aguirre: | I, the, that's a judgment call ultimately to be made by the Council, but I believe |
| 28 | | that they do not meet the standard for indemnification in the case of the four, |

| | |
|---|---|
| 1 | because we have determined that these four people engaged in fraud.  That's |
| 2 | the City's determination.  That is governing on the City Council.  That is |
| 3 | something that has been determined by our lawyers, they were retained for that |
| 4 | very specific purpose in the context of an illegal acts investigation, which we then |
| 5 | represented to our outside auditors, and our outside auditors relied upon.  With |
| 6 | regard to Mr. Uberuaga, and if you might recall I made a distinction in our memo, |
| 7 | Mr. Uberuaga was only found to be negligent.  Now, that doesn't get him |
| 8 | completely out of the woods but I think as of today, Mr. Uberuaga is in a different |
| 9 | status.  My suggestion would be, that as to the four, that based upon the fact that |
| 10 | the City has determined, and let me read you the language: "acted with wrongful |
| 11 | intent, scienter, as defined pursuant to section 10(b) of the Securities and |
| 12 | Exchange Act of 1934," that we decline to provide defense for them, and as to |
| 13 | Mr. Uberuaga, that we conduct an additional review of information that has, that is |
| 14 | available with regard to Mr. Uberuaga, to determine if the City needs to reconsider |
| 15 | the negligence determination in light of the fact that the Securities and Exchange |
| 16 | Commission has charged actual scienter based on recklessness, which would take |
| 17 | it up to the same level as to Frazier, Vattimo, Ryan and Webster.  I think that |
| 18 | would be the more prudent way to proceed. |
| 19 | Madaffer: Okay, so, I guess, just first to address the one issue that you got back in that |
| 20 | recusal thing.  I thought we got through that.  You know, I think Mr. Peters alluded |
| 21 | to it and I'll say it as well for me personally, you know, I have information |
| 22 | Mr. Aguirre that you don't have with respect to the SEC, and I feel very confident |
| 23 | that I can sit here and have this discussion today without being part of any further |
| 24 | actions by the SEC. |
| 25 | Aguirre: Would it be, I'm not, I'm not disagreeing with you, but would it be, would it be |
| 26 | something that you could put on the record so at least you'd have the record . . . |
| 27 | Madaffer: I just did. |
| 28 | |

| | | |
|---|---|---|
| 1 | Aguirre: | No, but I mean is the information, has the SEC told you that they will not be |
| 2 | | charging you, and Mr. Peters, have they told you that you're not going to be |
| 3 | | charged? Mr. Maienschein have they made that representation to you? |
| 4 | Madaffer: | Mr. Aguirre, I am not at liberty to go on beyond anything or what I've already |
| 5 | | said. So let me just leave it at that. |
| 6 | Aguirre: | Okay. Alright. |
| 7 | Madaffer: | But I will say, I will say this. As I kind of walk through this process, you know, if |
| 8 | | we refuse to provide lawyers' fees and whether, and you have to look at it two |
| 9 | | different ways. We could advance fees, because Mr. Cordileone makes a very |
| 10 | | good point, before you got here Mr. Aguirre, that it might be premature to pay |
| 11 | | now, but it could be done on a reimbursement type basis as another idea in lieu of |
| 12 | | indemnification. And I say that, because, you know, you know the standard of 995 |
| 13 | | says, okay, you know, what is their right? They have a right. You know, who has |
| 14 | | the burden of proof in this case? Is it them or is it us? In the case of the Zucchet, |
| 15 | | Murphy, Inzunza situation, this Council failed to provide legal coverage. They |
| 16 | | went to court. They sued. The court determined the City was obligated and then |
| 17 | | we paid, at the rates that they submitted. Isn't that correct, Mr. Aguirre? And |
| 18 | | that's what we just settled a little bit ago. |
| 19 | Aguirre: | But that's, but that's a completely different situation than this. |
| 20 | Madaffer: | How? |
| 21 | Aguirre: | This case they're charged. It would be more like with Mr. Inzunza and |
| 22 | | Mr. Zucchet were charged with the criminal proceedings and we had not |
| 23 | | determined that they were criminally involved, but yet we declined to provide |
| 24 | | legal defense funds for them. Here we've determined that four out of these five |
| 25 | | people have in fact committed fraud. That's what the City has determined. |
| 26 | Madaffer: | Okay, I understand that. And I don't want to get into an argument with you on |
| 27 | | that, but with all due respect Mr. Aguirre, the City can determine that the moon is |
| 28 | | |

| | | |
|---|---|---|
| 1 | | green and made of cheese, but at the end of the day, unless a court of law makes |
| 2 | | that statement, it's nothing that wouldn't prohibit them under this 995 from action. |
| 3 | Aguirre: | I think it would, because the City, you are operating with City, you've represented |
| 4 | | these facts to your auditor.  These are facts that you have represented to be true. |
| 5 | | You've retained someone to make this determination.  You're bound by this |
| 6 | | determination with regard to these four individuals, in terms of making your |
| 7 | | judgment call.  If in fact, and let me just say this, you're talking about millions of |
| 8 | | dollars here. |
| 9 | Madaffer: | Well, here's my worry though, Mr. Aguirre, is that it could even be more if we |
| 10 | | refuse.  This is the whole thing I've gone through on this.  If we refuse the fees, |
| 11 | | and say, okay people you're out on your own, and then they file an action against |
| 12 | | us.  Now if SEC comes back and actually charges them with fraud, corruption . . . |
| 13 | Aguirre: | They have charged them with fraud. |
| 14 | Madaffer: | Well, let's say they . . . |
| 15 | Aguirre: | They've charged them with fraud. |
| 16 | Madaffer: | Well, what they've done is they've charged them in a court.  To my understanding |
| 17 | | is, this item, and correct me if I'm wrong, isn't the SEC filed, haven't they just |
| 18 | | filed civil charges against them? |
| 19 | Aguirre: | Well no but that, wait a minute, but that's still fraud. |
| 20 | Madaffer: | They filed, they filed a lawsuit. |
| 21 | Aguirre: | But it's, no, no.  No, no. |
| 22 | Madaffer: | Okay, so they filed a lawsuit in federal court.  Now . . . |
| 23 | Aguirre: | They charged the fraud. |
| 24 | Madaffer: | Was that the end of it, or does a court still have to say whether or not . . . |
| 25 | Aguirre: | No, no.  But that's not, that's not the basis upon which you declined, or declining |
| 26 | | them the indemnification. |
| 27 | Madaffer: | Okay. |
| 28 | Aguirre: | The indemnification is . . . |

| | | |
|---|---|---|
| 1 | Madaffer: | They've been charged with fraud. |
| 2 | Aguirre: | They have been charged with point. They have been charged with the very thing |
| 3 | | that your . . . |
| 4 | Madaffer: | But this says because of actual fraud. |
| 5 | Aguirre: | This is actual fraud. |
| 6 | Madaffer: | It is? |
| 7 | Aguirre: | This is 10b-5, actual fraud. |
| 8 | Madaffer: | But what if the court said that there wasn't fraud? |
| 9 | Aguirre: | But that's not the issue. For purposes . . . |
| 10 | Madaffer: | But wait a minute, though. |
| 11 | Aguirre: | Because, because . . . |
| 12 | Madaffer: | If the court says there wasn't actual fraud . . . |
| 13 | Peters: | I think really, this is, it's important for both of you to be able to speak so try not to |
| 14 | | interrupt each other. |
| 15 | Madaffer: | Sorry. |
| 16 | Aguirre: | The record before you, right now, is the City of San Diego has determined that |
| 17 | | these four individuals have acted with fraud. That is what you have decided, you |
| 18 | | have determined using the former SEC people. That is the records before you. On |
| 19 | | that basis, they are not entitled to indemnification in a case in which they are |
| 20 | | charged with the very same thing by somebody else, and that proceeding is |
| 21 | | separate and distinct from what I'm talking about here. |
| 22 | Madaffer: | Okay, that's fair. |
| 23 | Peters: | May I ask you a question, just, if it's okay? Mr. Aguirre I just want to say to be, to |
| 24 | | be totally clear, the City has never necessarily accepted any of the conclusions that |
| 25 | | the Kroll . . . |
| 26 | Aguirre: | That's not true. That's not true. |
| 27 | Peters: | Let me, let me finish. That we, we accepted the report but that doesn't mean that |
| 28 | | any of us necessarily agree with those actions. |

| | | |
|---|---|---|
| 1 | Aguirre: | Not true. |
| 2 | Peters: | All right. |
| 3 | Aguirre: | You've, the City has represented to the auditor . . . |
| 4 | Peters: | What we said, what we said in the auditor was that this is what the Kroll Report |
| 5 | | says. |
| 6 | Aguirre: | No.  Kroll was our audit committee.  They were agents of this. |
| 7 | Peters: | That's what they said. |
| 8 | Aguirre: | No.  Kroll was the audit committee of the City of San Diego authorized to make |
| 9 | | this determination in order to satisfy the SEC, I'm sorry, in order to satisfy our |
| 10 | | outside auditor that we conducted a proper illegal action investigation . . . |
| 11 | Peters: | We're just gonna, we don't want to dwell on that.  I think we're just going to have |
| 12 | | to agree to disagree on that.  But I guess . . . |
| 13 | Aguirre: | But what are we disagreeing.  I don't understand what the disagreement is.  What |
| 14 | | I'm saying is, is that you have specifically . . . |
| 15 | Peters: | I actually have a productive question to ask. |
| 16 | Aguirre: | Okay, go ahead. |
| 17 | Peters: | I disagree with you on that.  And we're just going to leave that because that's |
| 18 | | really not necessary to the question I'm going to ask.  But just so you know I don't |
| 19 | | necessarily agree with everything in the Kroll Report.  I think it, you know, I agree |
| 20 | | that we hired them.  I agree that they made conclusions.  Those have advanced the |
| 21 | | ball for our City to some degree.  My question is under this law, though, when the, |
| 22 | | it provides that the defense of the, for purposes of the, of determining whether |
| 23 | | there is a defense owed, it says that the public entity has to determine whether he |
| 24 | | or she acted or failed to act because of actual fraud, corruption or actual malice. |
| 25 | | And the question I have is, is, is that something that you do from the face of the |
| 26 | | complaint or is that something you do from a body of evidence? |
| 27 | Aguirre: | No.  That's something that we already did.  See that's the point. |
| 28 | Peters: | I mean that's for the legal standard. |

| | | |
|---|---|---|
| 1 | Aguirre: | No, no.  The legal standard is, did you make a determination as the City?  A |
| 2 | | factual determination and is that factual determination supported by the evidence? |
| 3 | | Kroll, and there are, there are aspects about Kroll that you know, you can agree |
| 4 | | with or disagree with, but you have to admit that Kroll looked at a lot of evidence, |
| 5 | | they spent a lot of money, and they reached these determinations that is binding on |
| 6 | | the City for this purpose. |
| 7 | Peters: | They disagreed with your interim report, though, didn't they? |
| 8 | Aguirre: | Well, that's, that's, I don't, I think that you could . . . |
| 9 | Peters: | So that's not binding. |
| 10 | Aguirre: | Excuse me.  I think that, let's not get off on a side discussion. |
| 11 | Peters: | That's what I'm trying not to do [laughs]. |
| 12 | Aguirre: | No, let's not get off on a side discussion because I would say that they mostly |
| 13 | | agreed with what I said, but, that's not really the issue.  For purposes of these |
| 14 | | individuals, Kroll, this is, this is what the City has determined.  With regard to the |
| 15 | | City's . . . |
| 16 | Peters: | I don't want, you're re-stating now.  So I think . . . |
| 17 | Aguirre: | Well hold on.  Let me just, let me just make sure it's clear on the record.  With |
| 18 | | regard to the City's unlawful financial disclosures, we believe the evidence |
| 19 | | supports the determination that the following representatives acted with wrongful |
| 20 | | intent, i.e., scienter as defined by, as defined pursuant to section 10(b) of the |
| 21 | | Securities and Exchange Act. |
| 22 | Peters: | And it lists those four people. |
| 23 | Aguirre: | Frazier, Vattimo, Ryan, Webster.  That's exactly . . . |
| 24 | Peters: | I'm sorry. |
| 25 | Aguirre: | . . . the law that they're being charged with violated by the SEC, the City, there's |
| 26 | | no basis to provide them.  Taxpayers have no obligation to spend millions of |
| 27 | | dollars to defend individuals who have, the City has determined have engaged in |
| 28 | | |

| | | |
|---|---|---|
| 1 | | fraud. And those four people. Now, Mr. Uberuaga is in a slightly different, no |
| 2 | | he's in a different situation because it was only a negligence determination. |
| 3 | Peters: | I understand. I understand what you said. |
| 4 | Aguirre: | Okay, thank you. |
| 5 | Peters: | Mr. Madaffer, I'm sorry. I thought . . . . |
| 6 | Madaffer: | No problem. I thought that could help. I agree. |
| 7 | Peters: | We got the same answer. |
| 8 | Madaffer: | And just, Mr. Aguirre, I've written out a series of questions here. And so I started |
| 9 | | with my first one. Do they meet the standard for indemnification? And I'll just |
| 10 | | answer for you. You said basically, no. |
| 11 | Aguirre: | Well, as to the, as to the four. |
| 12 | Madaffer: | As to the four. I understand. And then Mr. Peters was trying to get to the point I |
| 13 | | was going to make, and it's kind of, they have, you're saying that the City has |
| 14 | | basically already charged them, so in your opinion they are . . . |
| 15 | Aguirre: | Not charged them. |
| 16 | Madaffer: | What? |
| 17 | Aguirre: | Not charged them. |
| 18 | Madaffer: | We determined they acted in fraud, in your opinion. |
| 19 | Aguirre: | We determined, we spent twenty million dollars. The purpose of that investigation |
| 20 | | was to determine . . . |
| 21 | Madaffer: | I understand. |
| 22 | Aguirre: | And we've represented . . . |
| 23 | Madaffer: | I got it. |
| 24 | Aguirre: | . . . those facts. |
| 25 | Madaffer: | I got that. Okay. |
| 26 | Aguirre: | . . . to our auditor. |
| 27 | Madaffer: | Okay, I got that. So the only issue that I have or quarrel with that is that I guess |
| 28 | | somebody else could come along and charge any one of our city employees with |

|  |  |  |
|---|---|---|
| 1 |  | fraud, and under the standard that you are suggesting, because that person's been |
| 2 |  | charged by fraud and even if they spent twenty million themselves, that therefore I |
| 3 |  | would have to take that on face value and not provide them a defense, when in fact |
| 4 |  | it could be absolutely ludicrous. |
| 5 | Aguirre: | Well, no, but, no, what I'm saying . . . |
| 6 | Madaffer: | I need a standard in which to make a decision. |
| 7 | Aguirre: | But the standard has already been set because you, you hired someone who |
| 8 |  | previously worked at the SEC. |
| 9 | Madaffer: | Right. |
| 10 | Aguirre: | They conducted an investigation. We then represented that investigation, those |
| 11 |  | facts, accepted those facts for purposes of our internal auditor, our external auditor. |
| 12 |  | That external auditor relied on them, published them in a report or financial |
| 13 |  | statements, and all of that was authorized by the City Council. |
| 14 | Madaffer: | Okay. |
| 15 | Aguirre: | Those are the facts we have to deal with . . . |
| 16 | Madaffer: | Alright. So let me just ask you this, Mr. Aguirre. Because I, the questions get |
| 17 |  | down to also, just to kind of cut to the chase on this, there is a few things that |
| 18 |  | could happen in between, and you talk about what could cost us millions of |
| 19 |  | dollars. The question becomes, if, assuming the City Council today did not |
| 20 |  | provide legal coverage, and I use the words legal coverage because there's, there's |
| 21 |  | two ways to approach it. One, and I guess I should ask you is if, you know . . .an |
| 22 |  | indemnification means almost a blanket coverage as opposed to an advancement of |
| 23 |  | fees, which is another approach that's been suggested, you know, and that, up until |
| 24 |  | such time that there's actually a judicial determination of the SEC case, and I do |
| 25 |  | realize 995.3, I believe, provides for reimbursement to the agency, 995.3(a). So, I |
| 26 |  | guess the question that I have is, is if we were today . . .let's walk through this. If |
| 27 |  | the City today, the Council voted to not provide, and I'll just say the collective |
| 28 |  | group, at this point, any legal indemnification, and let's say then they immediately |

| | | |
|---|---|---|
| 1 | | go to court, which they probably would do tomorrow, and they sue you, and |
| 2 | | they're going to sue the City.  And then I think at that point the burden of proof, |
| 3 | | doesn't that fall onto you, Mr. Aguirre? |
| 4 | Aguirre: | Well, because we, no, because . . . |
| 5 | Madaffer: | Why not? |
| 6 | Aguirre: | Well, for this reason.  We . . . |
| 7 | Madaffer: | Or does the employee have the burden of proof? |
| 8 | Aguirre: | Well, the, the . . . |
| 9 | Madaffer: | And the issue is fraud. |
| 10 | Aguirre: | The initial, the initial decision would be, does the City have a basis for making, did |
| 11 | | the City have a basis for making the determination that they had engaged in fraud? |
| 12 | | And then you would bring out the Kroll report which goes into it extensively. |
| 13 | Madaffer: | But wouldn't that be your . . .would you then have to prove that in court?  They'd |
| 14 | | have the burden of proof, but you would have to prove in a courtroom that in fact |
| 15 | | your statement would have to stand in a court. |
| 16 | Aguirre: | We just introduce, we just give them the Kroll Report. |
| 17 | Madaffer: | Okay. |
| 18 | Aguirre: | Give them the Kroll Report. |
| 19 | Madaffer: | But the bottom line is, so the employee sues that didn't get the coverage. |
| 20 | Aguirre: | Right. |
| 21 | Madaffer: | You then have to go to court and defend the City, and say that in your opinion, and |
| 22 | | you would give all the reasons that you've pretty much kind of shared with us . . . |
| 23 | Aguirre: | No. |
| 24 | Madaffer: | . . . a little bit of it here, that fraud existed. |
| 25 | Aguirre: | No.  No.  What you would do is, you would just introduce the Kroll Report and |
| 26 | | say the City had made this decision based upon the . . . . |
| 27 | Madaffer: | Okay. |
| 28 | | |

| | | |
|---|---|---|
| 1 | Aguirre: | . . . Kroll Report.  And then the court would look at that, in my judgment, and say |
| 2 | | that's a reasonable decision on the part of the City. |
| 3 | Madaffer: | Okay. |
| 4 | Aguirre: | Otherwise there would be, because there's no, there's not going to be any |
| 5 | | reimbursement. |
| 6 | Madaffer: | But wouldn't there be at that point, we would have to almost end up paying three |
| 7 | | different times.  I see Mr. Cordileone has a question.  I mean, if, if, you know how |
| 8 | | much would this cost us?  So we would have to pay for our defense of this lawsuit, |
| 9 | | and then what if we lost?  We're gonna then have to pay for them suing us, we're |
| 10 | | going to have to pay our costs for defending that, and then we're still going to have |
| 11 | | to pay for their legal expenses to indemnifying on the SEC.  We possibly could |
| 12 | | pay upwards of three different cases here, and I'm wondering what that might cost |
| 13 | | vis-a-vis simply giving them indemnification.  This is why I'm having a tough |
| 14 | | time making a very clean and clear-cut decision of whether or not we just go ahead |
| 15 | | and pay now, or do we pay later?  And if we pay now, can we pay on an |
| 16 | | advancement basis up until such point that there is a very clear judicial |
| 17 | | determination that there was actual fraud, corruption, or malice? |
| 18 | Cordileone: | Thank you.  One of the things that we did learn from the Torres and the Zucchet |
| 19 | | cases was that, if there is, and these are magic words, a determination by the City |
| 20 | | council that there was actual fraud or malice, that then would end the lawsuit that |
| 21 | | you have described.  That is, let's say one of the four individuals files a lawsuit |
| 22 | | against the City, says, no I did not act with actual fraud or malice.  All we would |
| 23 | | need to do is present to the Superior Court the documentation of this vote, and that |
| 24 | | is a determination by the City Council with actual fraud or malice, and it's end of |
| 25 | | story.  They then lose on that point. |
| 26 | Madaffer: | Okay.  I see.  So, Mr. Aguirre what you're saying is, is that in addition to the |
| 27 | | action of whether or not we would have to provide these individuals coverage, you |
| 28 | | | |

| | | |
|---|---|---|
| 1 | | would want this Council to also vote that they acted with fraud or malice or |
| 2 | | scienter, or what have you. |
| 3 | Aguirre: | Well, I would, I would take the position and take the position that that's already |
| 4 | | occurred with the adoption of the Kroll Report and the use of the Kroll Report. It |
| 5 | | would help, it would be helpful if you wanted to do that, but I'm not going to ask |
| 6 | | you to do that, because of the, you know, all the reasons that we stated, and again |
| 7 | | that raises the whole problem with the, with the conflict issue, but I'm not going to |
| 8 | | ask you to do that. I think that we have the Kroll Report and I think the Kroll |
| 9 | | Report is a sufficient basis because we've already essentially done that. |
| 10 | Madaffer: | Okay. Thank you. |
| 11 | Peters: | Mr. Hueso. Do you have a motion Mr. Madaffer, no? I'm sorry, Mr. Young. I |
| 12 | | went to the second name. |
| 13 | Young: | I'm gonna try to use some, I always try to use common sense but I'm going |
| 14 | | to particularly try to use common sense today, if that's okay, Mr. Peters. |
| 15 | | Mr. Aguirre, a couple questions. Now, and I'm not sure if this is the legal standard |
| 16 | | that we would use to make a decision on this, but, tell me if I'm correct. Ed Ryan, |
| 17 | | Pat Frazier, Terri Webster and Mary Vattimo have been charged with, by the |
| 18 | | federal government? |
| 19 | Aguirre: | By the U.S., Securities and Exchange Commission. |
| 20 | Young: | Federal? |
| 21 | Aguirre: | Federal, federal. |
| 22 | Young: | The D.A.'s Office? |
| 23 | Aguirre: | Yes. |
| 24 | Young: | SEC? |
| 25 | Aguirre: | Well, the U.S. Attorney, SEC, and yes. |
| 26 | Young: | And also. |
| 27 | Aguirre: | Different, different crimes, but, different charges. Two are criminal. One is civil. |
| 28 | Young: | But all involving some of the same stuff? |

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

| | | |
|---|---|---|
| 1 | Aguirre: | Yes, involving essentially . . . |
| 2 | Young: | So we have three different, three different institutions that have charged these |
| 3 | | folks? |
| 4 | Aguirre: | Correct. |
| 5 | Young: | And then we have the Kroll organization, Kroll investigation that also implicated |
| 6 | | these individuals. |
| 7 | Aguirre: | Kroll actually made the determination that they had committed fraud. |
| 8 | Young: | So, yeah, four of these different entities doing that? |
| 9 | Aguirre: | Correct. |
| 10 | Young: | Not to say that this is the legal standard that we should use, but I'm just using, |
| 11 | | trying to use common sense here. |
| 12 | Aguirre: | Correct. |
| 13 | Young: | And not, Mike Uberuaga has only been implicated by the SEC? |
| 14 | Aguirre: | Well, Mike Uberuaga has only been implicated by the SEC and our determination |
| 15 | | as to him was negligence, so I think we would have to revisit that issue. |
| 16 | Young: | Right.  And, you know, when you have . . . to me, I've tried to be really patient, |
| 17 | | and I try to be very fair in supporting and being very flexible when it comes to the |
| 18 | | standard of indemnification here, but it just comes to the point where there is just |
| 19 | | so much evidence that, that there is some malfeasance here, identified by a number |
| 20 | | of different entities, reading all of the information related to this from all different |
| 21 | | points of view.  I believe that I cannot meet the standard of indemnification |
| 22 | | because of just the preponderance of evidence, and accusations related to these |
| 23 | | individuals.  And, now, let me make sure I understand, when it comes to the |
| 24 | | Mayor's office, what is your recommendation?  I just want to make sure I'm clear |
| 25 | | about that. |
| 26 | Goldstone: | Our recommendation is to not pay for their legal bills at this point in time. |
| 27 | Young: | Including Mr. Uberuaga? |
| 28 | Goldstone: | That is correct. |

| | | |
|---|---|---|
| 1 | Young: | Okay. What is it about, what is it about Mr. Uberuaga that you wouldn't do that |
| 2 | | for? |
| 3 | Goldstone: | We're basing it on the fact that charges by a regulatory agency, the SEC, has been |
| 4 | | filed against all five individuals, and at this point in time we recommend that, you |
| 5 | | know, and the charges were reckless behavior, and we recommend that, you know, |
| 6 | | we stop covering their legal expenses, and should they go through the process and |
| 7 | | be found innocent, they can come back and ask for reimbursement. It would be |
| 8 | | easier for them to ask for reimbursement than for us to go after them should they |
| 9 | | be found guilty. |
| 10 | Young: | Well, I agree with that. And I guess one other question when it comes to our City |
| 11 | | Attorney, the issue of Tracy Means. We did not indemnify her, did we? |
| 12 | Aguirre: | We sued her and that case is still up on appeal. |
| 13 | Young: | Yeah. But we didn't indemnify her. |
| 14 | Aguirre: | We did not indemnify her. |
| 15 | Young: | She's asking for that, and we could of done that. |
| 16 | Aguirre: | We could have. |
| 17 | Young: | After one accusation by one entity which is the City Attorney's office to . . . |
| 18 | Aguirre: | Well, not just the City Attorney's office. She was also, you know, there was, she |
| 19 | | was dismissed for the claims, though. |
| 20 | Young: | Yeah. Well, to me, the evidence, and then even now were finding out that that |
| 21 | | might not even be the issue, that she did, maybe she did not even commit any of |
| 22 | | those acts. So, I just can't see us supporting, paying for these individuals after all |
| 23 | | of the things that we have learned about these cases, and so I will make the motion |
| 24 | | to not indemnify Ed Ryan, Pat Frazier, Terri Webster, Mary Vattimo, and, and to, |
| 25 | | and also Mike Uberuaga. That will be my, that will be my motion. |
| 26 | Peters: | The motion by Mr. Young, seconded by Mr. Faulconer. And the only issue is, |
| 27 | | do you want to honor the City Attorney's request for another month to look at |
| 28 | | Mr. Uberuaga? |

| | | |
|---|---|---|
| 1 | Aguirre: | I would ask for that just so we have a proper record. |
| 2 | Young: | I won't make that motion.  I mean to me . . . |
| 3 | Peters: | I would like to have the proper record.  I'm not necessarily going to disagree with |
| 4 | | you, but if he's not ready to defend that action I would give him another month. |
| 5 | Aguirre: | Please, if you would, just because we only found negligence, and it may very well |
| 6 | | be that there's a basis to go higher than that but . . . |
| 7 | Young: | So, but, will there be any funds actually being used for this? |
| 8 | Aguirre: | No.  Not in the mean time. |
| 9 | Young: | Say that on the record. |
| 10 | Aguirre: | No.  Not in the mean time, no. |
| 11 | Peters: | And presumably, Mr. Aguirre would notify Mr. Uberuaga within the twenty-day |
| 12 | | limit that we're . . . we're doing more investigation, is that correct? |
| 13 | Aguirre: | I will do that, yes. |
| 14 | Young: | I'd only support that with that in mind.  So that would be my motion. |
| 15 | Peters: | Okay.  Mr. Faulconer is that alright?  Okay.  Mr. Hueso? |
| 16 | Hueso: | I think you already went into this, but I just want to restate it, just to make it clear |
| 17 | | in my mind that there's a certain . . .going back to the standard.  These are all |
| 18 | | people that were performing a job for the City. |
| 19 | Aguirre: | Right. |
| 20 | Hueso: | They were doing something to advance some goal of the City.  And in that, one, |
| 21 | | Uberuaga was negligent, so technically he made a mistake, right?  And the others |
| 22 | | intentionally did something wrong. |
| 23 | Aguirre: | What they call scienter, which is, which is an evil motive or a bad motive. |
| 24 | | Knowing. |
| 25 | Hueso: | So in the, but they were, they were doing their job as, in the capacity of |
| 26 | | employees? |
| 27 | Aguirre: | Well, in some ways, yes, and some ways beyond that, but it included that.  It |
| 28 | | certainly included that. |

| | | |
|---|---|---|
| 1 | Hueso: | Because normally we're required to, or again it's always going to be a judgment |
| 2 | | call whether we're required to or not, to defend our employees.  But you're saying |
| 3 | | there's some reasonable out for us . . . |
| 4 | Aguirre: | Well, I'm just saying . . . |
| 5 | Hueso: | . . . in not defending them because, because, I mean, it's clear that they were doing |
| 6 | | their job. |
| 7 | Aguirre: | Well, they did their job and caused an enormous amount of damage to the City, |
| 8 | | because according to our own determination they were engaged in a reckless fraud, |
| 9 | | and over a long period of time. |
| 10 | Hueso: | But going back to the . . . |
| 11 | Aguirre: | From which they personally benefited. |
| 12 | Hueso: | Do we, do we have a personal benefit? |
| 13 | Aguirre: | In the report we do, yes. |
| 14 | Hueso: | Was, was it a financial benefit? |
| 15 | Aguirre: | It was. |
| 16 | Hueso: | What was the specific financial benefit? |
| 17 | Aguirre: | The excessive pensions that they received in some cases, getting special treatment, |
| 18 | | for example, in the case of Ms. Webster, where she got to circumvent the ninety |
| 19 | | percent limit.  And, each one I could go through, but I think that that's part of what |
| 20 | | Kroll covered in their, in their investigative report. |
| 21 | Hueso: | So they can actually pinpoint some financial benefit to themselves? |
| 22 | Aguirre: | Correct. |
| 23 | Hueso: | That wasn't received by other employees? |
| 24 | Aguirre: | Well, not received by other employees given . . .  received perhaps by some other |
| 25 | | employees. |
| 26 | Hueso: | Was, was it a tailored benefit specifically for them as individuals? |
| 27 | Aguirre: | In some cases, yes.  But, but again the . . .  (inaudible) in some, but the core of the |
| 28 | | charges were that they engaged in a fraud, what's called scienter, which means that |

|   |   |   |
|---|---|---|
| 1 |  | they had a bad motive.  And that's what they, that's what they were found to have |
| 2 |  | engaged in by our people, our investigation, and now that's what they're charged |
| 3 |  | with, along with all the other things that they're charged with criminally.  Ed Ryan |
| 4 |  | is not charged with criminal, with criminal charges, but he is charged with this. |
| 5 | Hueso: | Okay, can the motion be restated, please? |
| 6 | Peters: | The motion is to deny a defense to the four individuals other than Mr. Uberuaga, |
| 7 |  | and on Mr. Uberuaga, to continue that item for thirty days.  Does that conclude |
| 8 |  | your comments, Mr. Hueso? |
| 9 | Hueso: | Yes. |
| 10 | Peters: | Mr. Faulconer. |
| 11 | Faulconer: | Mr. Aguirre, just briefly on the Uberuaga issue.  Even though the SEC has made |
| 12 |  | their ruling, your desire for extra time to accomplish what? |
| 13 | Aguirre: | I want to look at the separation between our determination of negligence and their |
| 14 |  | determination of recklessness, because if they determine that there was actual |
| 15 |  | scienter, that would have elevated what we found, and we will want to conduct a |
| 16 |  | review of that, because that's, that's a distinction.  I'm trying to work my way |
| 17 |  | through the record, what, the basis for our action is what the Kroll found with |
| 18 |  | regard to the, to the four. |
| 19 | Faulconer: | The basis is both, is it not? |
| 20 | Aguirre: | Huh? |
| 21 | Faulconer: | Kroll, isn't the basis both? |
| 22 | Aguirre: | Well, no.  In the case of, in the case of the four, Kroll found a species of |
| 23 |  | knowingness, which is recklessness sufficient to satisfy. |
| 24 | Faulconer: | No, but the difference, you have a difference between the . . . Let me rephrase it |
| 25 |  | this way.  The SEC's charges on its own is not enough in your opinion? |
| 26 | Aguirre: | Not on its face.  I would say that, I would be more inclined to say that we would |
| 27 |  | have to have conducted our own review and done a factual review before we |
| 28 |  | addressed that issue (inaudible). |

| | | |
|---|---|---|
| 1 | Faulconer: | Well, I'm . . . if it's, how long was the time, Mr. Young, that was in the motion? |
| 2 | | Thirty days. |
| 3 | Young: | It says twenty on the . . . |
| 4 | Aguirre: | Well, that's twenty, that's a different issue.  I will respond within the twenty days |
| 5 | | and let counsel for Mr. Uberuaga know that we will have a response within the |
| 6 | | thirty-day period that the Council is setting. |
| 7 | Peters: | Alright, I see no further comments.  I, I believe the motion is appropriate, and will, |
| 8 | | will support it.  I just want to say for the record, my disagreement again, with the |
| 9 | | characterization of the Kroll Report as having been a finding of the City, although |
| 10 | | I understand it's part of the disclosures, I'd also suggest that the evidence |
| 11 | | contained in the interim reports, which I don't know the numbers, not necessarily |
| 12 | | the conclusions but that evidence is also relevant to this and it would be a basis for |
| 13 | | this finding.  Alright on the motion by Mr. Young, seconded by Mr. Faulconer, |
| 14 | | please vote.  Call the role.  Passes unanimously with Districts 3 and 6 recused. |
| 15 | | Alright, let's call those other folks back in, if we can. |

16   *End as to Item 330.*

17

18        I declare under penalty of perjury under the laws of the United States of America that the

19   foregoing is true and correct.  Executed on September 8, 2008, at San Diego, California.

20

21                                            *Nancy Scott*
                                        _____
22                                            NANCY SCOTT

23   SD:22166687.1

24

25

26

27

28