1

**TABLE OF CONTENTS**

2

**Page**

3    TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4    I.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5         A.    Applicable Pleading Standards. . . . . . . . . . . . . . . . . . . . . . 1

6              1.    Rule 12(b)(6) Standards. . . . . . . . . . . . . . . . . . . . 1

7              2.    The SEC Complaint Is Subject To The Heightened
                    Pleading Standards Of Rule 9(b). . . . . . . . . . . . . . . . . . . 2

8         B.    The Complaint Against Defendant Webster Must Be
                Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9

10             1.    The SEC Has Not Adequately Pled A Securities
                    Fraud Claim Against Defendant Webster. . . . . . . . . . . . . 3

11

                    a.    The SEC Complaint Fails To Allege Facts
12                         Establishing Defendant Webster Made Any
                          Material Misstatements. . . . . . . . . . . . . . . . . . . .4

13

                    b.    The Review of Appendix B. . . . . . . . . . . . . . . . 5

14

                    c.    The Rating Agency Presentations. . . . . . . . . . . . . .7

15

          C.    Actuarial Pension Projections And Future Retiree
16              Healthcare Liabilities Are Nondisclosable And Immaterial
                As A Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17

               1.    Future Retiree Health Care Liabilities Were
18                   Nondisclosable And Immaterial As A Matter Of Law. . . . .8

19             2.    Actuarial Projections Are Immaterial And
                    Nondisclosable As A Matter Of Law. . . . . . . . . . . . . . . 10

20

          D.    Substantial Portions Of The Requested Relief Are
21              Precluded By The Statute Of Repose. . . . . . . . . . . . . . . . . .14

22        E.    The Alleged Omissions Regarding The City's Pension
                Fund And Retiree Health Care Obligations Are Patently
23              Irrelevant To An Investor In Tax Anticipation Notes. . . . . . . . . . 15

24        F.    Legislative Immunity Requires Dismissal Of The
                Complaint In Its Entirety. . . . . . . . . . . . . . . . . . . . . . . . 15

25

26    II.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

27

28

08CV0625

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES:**

*Cleff v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). . . . . . . 2

*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . .2

*De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). . . . . . . . . . . . . . . . . .1

*Devaney v. Chester*, 813 F.2d 566, 569 (2nd Cir. 1987). . . . . . . . . . . . . . . . . .3

*Fecht v. The Price Company*, 70 F.3d 1078, 1081 (9th Cir. 1995). . . . . . . . . . .4

*Freeman v. Decio*, 584 F.2d 186, 199-200 (7th Cir. 1978). . . . . . . . . . . . . . . 11

*Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). . . . . 4

*In re Lyondell Petrochemical Co. Securities Lit.*,
984 F.2d 1050, 1052-53 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . .9,12

*In re Tibco Software, Inc.*, 2006 WL 1469654,
at *28 (N.D. Cal. May 25, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*James v. Gerber Products Co.*, 587 F.2d 324 (6th Cir. 1978). . . . . . . . . . . . . . .10

*Marsh v. Armada Corp.*, 533 F.2d 978, 987 (6th Cir.). . . . . . . . . . . . . . . . . . 11

*Panter v. Marshall Field and Co.*, 646 F.2d 271, 292 (7th Cir. 1981). . . . . . . . 10

*Parnes v. Gateway 2000 Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). . . . . . . . . . . .4

*Robertson v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1981). . . . . . . . . . . . . 1

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). . . 2

*SEC v. Baxter*, 2007 WL 2013958, at *3 (N.D. Cal. July 11, 2007). . . . . . . . . . 2

*SEC v. Berry*, 2008 WL 2002 537 (N.D. Cal.). . . . . . . . . . . . . . . . . . . . . . .6,7,14

*SEC v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . .3

*SEC v. Tambone*, 417 F.Supp.2d 127, 131 (D. Mass. 2006). . . . . . . . . . . . . . 3

*SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004). . . . . . . . . . . . . . . . . . . 2

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2005). . . . . 3,4

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001),
*amended by* 275 F.3d 1187 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . .2

*Vaughn v. Teledyne, Inc.*, 628 F.2d 1214 (9th Cir. 1980). . . . . . . . . . . . . . . . 11

08CV0625

1 | *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). . . . . . . . . . . . . 2

2 | *Walker v. Action Industries, Inc.,* 808 F.2d 703 (4th Cir. 1986). . . . . . . . . . . . . 11

3 | **STATE CASES:**

4 | *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 457-460. . . . . . . . . . . . . 10

5 | **SUPREME COURT CASES:**

6 | *Aaron v. SEC,* 446 US 680 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7 | *Bell Atlantic v. Twombly,* 127 S.Ct. 1955, 1965 (2007). . . . . . . . . . . . . . . . . 1,2

8 | *TSC Industries v. Northway, Inc.,* 426 U.S. 438 (1976). . . . . . . . . . . . . . . . . .3

9 | **ATTORNEY GENERAL OPINIONS:**

10 | *In re Horton,* 88 Ops. Cal. Atty. Gen., *3 (2005) (Opinion No. 04-710). . . . . . .10

11 | **FEDERAL RULES:**

12 | Rule 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

13 | Rule 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2,3,8

14 | Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,3,6

15 | **UNITED STATES CODES AND REGULATIONS:**

16 | 15 U.S.C. § 77q(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

17 | 28 U.S.C. § 2462. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

18 | 17 C.F.R. § 240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

19 | **SECURITIES AND EXCHANGE ACT:**

20 | Rule 10b-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 | Section 17(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22 | **GOVERNMENTAL ACCOUNTING STANDARDS BOARD RULES:**

23 | GASB Statement No. 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

24 | GASB Statement No. 50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

25 | **MISCELLANEOUS:**

26 | *Disclosure of projections of future economic performance,*
   27 | 38 Fed. Reg. 7220 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 |

1  **FRANK T. VECCHIONE**
   Attorney at Law
2  105 West "F" Street, Suite 215
   San Diego, California 92101
3  Telephone: (619) 231-3653
   Facsimile: (619) 239-0056
4  Email: ftvlaw@aol.com
   CA State Bar: 054730
5
   Appearing specially for Defendant,
6  **TERESA A. WEBSTER**

7

8                  **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**
                    **(Honorable Dana M. Sabraw)**
10

| | |
|---|---|
| 11 SECURITIES AND EXCHANGE COMMISSION, ) | CASE NO. 08-CV-0625-DMS (LSP) |
| ) | **MEMORANDUM OF POINTS AND** |
| 12 Plaintiff, ) | **AUTHORITIES IN SUPPORT OF** |
| ) | **MOTION TO DISMISS THE** |
| 13 vs. ) | **COMPLAINT** |
| ) | |
| 14 MICHAEL T. UBERUAGA, ) | |
| EDWARD P. RYAN, PATRICIA ) | |
| 15 FRAZIER, TERESA A. WEBSTER, ) | |
| and MARY E. VATTIMO, ) | |
| 16 ) | **Date: November 7, 2008** |
| Defendants. ) | **Time: 1:30 p.m** |
| 17 _____ ) | |

18                              **I.**

19                           **ARGUMENT**

20   A.    **Applicable Pleading Standards**

21         1.    **Rule 12(b)(6) Standards**

22         A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests

23   the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

24   A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the

25   factual allegations do not raise the "right of relief above the speculative level." *Bell Atlantic*

26   *v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Legal conclusions need not be taken as true

27   merely because they are cast in the form of factual allegations. *Robertson v. Corrothers*, 812

28   F.2d 1173, 1177 (9th Cir. 1981). "Nor is the court required to accept as true allegations that

1  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

2  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9ᵗʰ Cir. 2001), *amended by* 275 F.3d

3  1187 (9ᵗʰ Cir. 2001).  A complaint is properly dismissed where either: (1) it lacks a

4  cognizable legal theory for recovery; or (2) where the plaintiff alleges insufficient facts to

5  support a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

6  534 (9ᵗʰ Cir. 1984).

7          In evaluating a Rule 12(b)(6) motion, "the Court must accept well-pleaded allegations

8  as true, but it is not required to accept 'legal conclusions cast in the form of factual

9  allegations if those conclusions cannot reasonably be drawn from the facts alleged.'" *SEC

10  v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004) (dismissing SEC complaint; quoting *Cleff v.

11  Cult Awareness Network*, 18 F.3d 752, 754-55 (9ᵗʰ Cir. 1994)).  Moreover, even under the

12  so-called "notice pleading" standard of Rule 8(a)(2), the SEC is required to plead *specific

13  facts* that, if proven, would establish its claims.  *Bell Atlantic Corp. v. Twombly, supra*, at

14  1967.

15          2.      **The SEC Complaint Is Subject To The Heightened**
                 **Pleading Standards Of Rule 9(b)**

16

17          Because it has alleged fraud, the SEC faces heightened pleading requirements.  Under

18  Rule 9(b), allegations of fraud must be stated with particularity.  *See Yuen*, 221 F.R.D. at 634.

19  The SEC must specifically allege the "who, what, when, where, and how" of the fraudulent

20  conduct.  *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9ᵗʰ Cir. 2003) (quoting *Cooper v.

21  Pickett*, 137 F.3d 616, 627 (9ᵗʰ Cir. 1997)).  Rule 9(b) applies not only to fraud claims, but

22  also to non-fraud claims grounded in allegations of fraudulent conduct.  *Vess*, 317 F.3d at

23  1103-04; *see also SEC v. Baxter*, 2007 WL 2013958, at *3 (N.D. Cal. July 11, 2007).

24          In the context of fraud claims, many courts require the pleader to allege (1) the time,

25  place, and contents of the false representations or omissions, and explain how they were

26  fraudulent, (2) the identity of the person making the misrepresentations, (3) how the

27  misrepresentations misled the plaintiff, and (4) what the speaker gained from the fraud.  The

28  amount of particularity required for pleading fraud generally depends upon the amount of

1    access the pleader has to the specific facts. See, e.g., *Devaney v. Chester*, 813 F.2d 566, 569

2    (2nd Cir. 1987) ("[W]e recognize that the degree of particularity required should be

3    determined in light of such circumstances as whether the plaintiff has had an opportunity to

4    take discovery of those who may possess knowledge of the pertinent facts.")[1]

5        **B.**     **The Complaint Against Defendant Webster Must Be Dismissed**

6        **1.**     **The SEC Has Not Adequately Pled A Securities Fraud Claim Against Defendant Webster**

7        To plead a violation of section 10(b) of the Securities Exchange Act of 1934

8    ("Exchange Act"), Rule 10b-5 thereunder, and section 17(a)(1) of the Securities Act of 1933

9    ("Securities Act"), the SEC must allege facts, that if proven, would show Ms. WEBSTER

10   made a misstatement or omission of a material fact. See *SEC v. Fehn*, 97 F.3d 1276, 1289

11   (9th Cir. 1996) (Exchange Act); *Aaron v. SEC*, 446 US 680 (1980) (Securities Act).[2] The

12   SEC has not adequately pled such violations here because it has failed to plead with

13   sufficient particularity that Ms. WEBSTER made an actionable material misstatement or

14   omission.

15       The standard for materiality was enunciated by the United States Supreme Court in

16   *TSC Industries v. Northway, Inc.*, 426 U.S. 438 (1976), when the Court stated, "There must

17   be a substantial likelihood that the disclosure of the omitted fact would have been viewed by

18   the reasonable investor as having significantly altered the 'total mix' of information made

19   available." While materiality is a mixed question of fact and law, it may be resolved by the

20   Court as a matter of law if the immateriality of the statement or allegedly omitted fact is so

21

22   ――――――――――――――

23       [1]     It is especially appropriate to strictly enforce Rule 9(b) here, where the SEC has investigated and taken depositions for an extended period (over four years) before filing its

24   Complaint. *See, e.g., SEC v. Tambone*, 417 F.Supp.2d 127, 131 (D. Mass. 2006) (granting Rule 12(b)(6) dismissal and refusing to relax Rule 9(b) given the SEC's extensive pre-litigation

25   investigation).

26       [2] 15 U.S.C. § 77q(a); 17 C.F.R. § 240. 10b-5(b). Defendant Webster does not address the

27   "scheme" or "artifice" liability provision of Rule 10b-5 (*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2005) in that there is no allegation of deceptive purpose and effect as required

28   for liability under those provisions.

    

1   obvious that reasonable minds would not differ. *Id*, at 455; See also, *Fecht v. The Price*

2   *Company*, 70 F.3d 1078, 1081 (9ᵗʰ Cir. 1995). As one court has indicated, "a complaint that

3   alleges only immaterial misrepresentations presents an 'insuperable bar to relief,' and

4   dismissal of such a complaint is proper." *Parnes v. Gateway 2000 Inc.*, 122 F.3d 539, 546

5   (8ᵗʰ Cir. 1997).

6          a.    **The SEC Complaint Fails To Allege Facts Establishing Defendant Webster Made Any Material Misstatements**

7       A defendant is not liable for fraud requiring scienter[3] under sections 17(a) or 10(b)

8   unless the individual makes a material misstatement, signs a document containing a material

9   misstatement, or substantially participates or was intricately involved in the preparation of

10  the allegedly fraudulent statements. *Simpson v. AOL Time Warner, Inc.*, 452 F3d 1040, 1048

11  (9ᵗʰ Cir. 2006); *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 n.5 (9ᵗʰ Cir. 2000). The

12  Complaint in this cause fails to alleged Ms. WEBSTER made an actionable statement.

13      The Complaint, as it pertains to the alleged conduct of defendant WEBSTER, alleges,

14  in paragraph 39:

15

16        Webster recklessly participated in making false and misleading statements in the City's disclosures and in the rating agency presentations. Webster reviewed the relevant disclosures in appendix B, including the

17  pension footnotes in the City's financial statements. She knew or was reckless in not knowing that the statements contained in appendix B were false and

18  misleading. Nevertheless, she failed to correct the misstatements. Additionally, Webster made oral presentations on the pension plan before the

19  rating agencies in 2003 and fielded numerous questions on that topic.

20      Thus, the allegations of fraud against Ms. WEBSTER are based on two actions:

21      (1)    her "review" of the City disclosures in "appendix B, including the pension

22          footnotes"; and

23      (2)    her "oral presentations on the pension plan" before the rating agencies "in

24          2003."

25

26

27

28  [3] The Complaint in this cause alleges Ms. Webster acted with scienter, i.e., she acted "recklessly." (Complaint, ¶¶ 5, 39.)

- 4 -

b.    **The Review Of Appendix B**

Initially, it must be noted that the SEC only alleges, without any factual particularity, that Ms. WEBSTER "reviewed" the disclosures in appendix B.[4]  There is no indication as to the specifics of the "review,"the timing of the "review," nor, more importantly, is there any allegation that the "review" was part of the City bond offering process.

Tellingly absent, after four (4) years of investigation by the SEC, is any allegation that Ms. WEBSTER participated in any way in the City's securities offerings during 2002 or 2003.  There is no allegation that Ms. WEBSTER ever advised the City Council or any city official regarding the issuance of the securities.  There is no allegation Ms. WEBSTER was a member of the City "transactional financing teams" that prepared the City's offerings or that she participated in the team "page-turner meetings."  There is no allegation that Ms. Webster was involved in any way in the preparation of the official statements (appendix A), the City CAFRs (appendix B) or the continuing disclosures.  There is no allegation that Ms. WEBSTER oversaw, supervised or participated in preparation of these documents, nor is there any allegation that Ms. WEBSTER signed or certified any of the pertinent offering documents.  The SEC merely alleges that, at some time, Ms. WEBSTER "reviewed" the City CAFRs (appendix B) and failed to correct misstatements contained therein.  There is no allegation by the SEC that this undefined "review" of the City CAFRs was conducted by Ms. WEBSTER in relation to any specified participation in the City bond offerings.  This vague allegation of document "review" does not rise to the level of substantial participation or intricate involvement in the allegedly fraudulent statements made or signed by others.

The Complaint is fatally lacking in specificity as to Ms. WEBSTER; there are no allegations stating facts, with particularity, indicating that Ms. WEBSTER was **directly involved** in the preparation of any allegedly misleading statements.  The SEC alleges no specific facts regarding the time, place or nature of Ms. WEBSTER's "review" of appendix

---

[4] Appendix B is identified as the City's audited financial statements (CAFRs) for fiscal years 2001 and 2002; included in the 2002 and 2003 bond offering documents, respectively. (Complaint ¶ 27.)

08CV0625

1  B. Instead, it asserts the bare conclusion, without supporting facts, that Ms. WEBSTER was

2  involved in some unidentified manner, at some unidentified time, in the review of these

3  documents.

4      A recent opinion from the United States District court for the Northern District of

5  California is directly on point with regard to the allegations contained in paragraph 39 of this

6  Complaint. In *SEC v. Berry*, 2008 WL 2002 537 (N.D. Cal.), the SEC Complaint alleged that

7  defendant *Berry* "reviewed, discussed, and finalized" various public filings containing

8  fraudulent misstatements.  The SEC alleged the defendant should be held liable for the

9  misstatements based on its assertion the defendant "knew or was reckless in not knowing"

10  of the material misstatements in the reviewed and finalized documents.  Defendant brought

11  a motion to dismiss the Complaint pursuant to Rule 12(b)(6).

12      In granting defendant's motion, the Court found "Ms. Berry has carried her burden

13  of demonstrating the SEC has failed to allege with particularity any securities fraud claim

14  based on misstatements...."  The Court noted:

15  "Ms. Berry argues that she did not make any false statements, and hence could
    not have committed securities fraud.  Signing a document containing a false
16  statement can satisfy the conduct prong of Rule 10b-5. E.g., *Howard v. Everex
    Systems, Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000).  Substantial or intricate
17  involvement in preparing a false statement that is later made by another also
    supports a claim for securities fraud. E.g., *In re Software Toolworks, Inc.
18  Securities Litig.*, 50 F.3d 615, 628-29 & n.3 (9th Cir. 1994.)

19  The SEC's allegations fall short of these thresholds.  The SEC's conclusory
    pleadings that Ms. Berry "reviewed" and "discussed" various filings is
20  insufficient to plead (with particularity) Ms. Berry's role in the purported
    fraud.  With respect to certain filings at KLA, the SEC goes one verb further
21  and alleges that Ms. Berry "reviewed, discussed, and finalized" various public
    filings.  Finalizing a document for another executive to sign may suffice. *In
22  re Software Toolworks*, 50 F.3d at 628 & n.3 (holding auditor liable for its
    "significant role in drafting and editing" a false filing).  Yet the SEC fails to
23  alleged with particularity what Ms. Berry's role was in "finalizing" these
    filings.  The SEC presumably knows what Ms. Berry's role was as it has
24  already obtained significant document discovery from Ms. Berry's former
    employers."
25
   (*SEC v. Berry*, 2008 WL 2002537 *10 (N.D.Cal.)[5]
26

27  ─────────────────
      [5] See also, *In re Tibco Software, Inc.*, 2006 WL 1469654, at *28 (N.D. Cal. May 25, 2006)
28  (plaintiffs' "conclusory allegations that 'defendants were involved in drafting, producing, reviewing

1      In the cause at bar, the SEC has failed to state with particularity any role Ms.

2   WEBSTER played with regard to the alleged fraudulent documents (appendix B).  The

3   conclusory pleading that Ms. WEBSTER "reviewed" various documents "is insufficient to

4   plead (with particularity) [her] role in the purported fraud." *SEC v. Berry, supra*, at *10.

5          c.      **The Rating Agency Presentations**

6      With regard to the rating agency presentations, the Complaint alleges:

7          The City made presentations to the rating agencies on a yearly basis,
       both in connection with specific bond offerings and to update the rating
8      agencies on the City's general credit.  In 2003, upon the rating agencies'
       request, the City included information about its pension liabilities in these
9      presentations. (Complaint; ¶ 29.)

10         In the 2003 rating agency presentations, the City failed to disclose,
       among other things, the material facts identified in paragraph 31.[6] (Complaint;
11     ¶ 33.)

12  Ms. WEBSTER is alleged to have participated in the 2003 rating agency

13  presentations.  The Complaint alleges, as to Ms. WEBSTER:

14         Webster recklessly participated in making false and misleading statements in
       the ... rating agency presentations.
15                                         *****
       [W]ebster made oral presentations on the pension plan before the rating
16     agencies in 2003 and fielded numerous questions on that topic. (Complaint; ¶
       39.)
17
    These vague allegations that Ms. WEBSTER "made oral presentations" to the rating
18
    agencies in 2003 and "fielded numerous questions" on the pension plan topic does not satisfy
19
    the particularity requirement for a fraud allegation.  The required "who, what, when, where
20
    and how" of fraud specification is missing from the rating agency allegation.  The "making
21
    of a presentation" and "fielding questions" is no more specific and particular as to one's role
22
    in a purported fraud than "reviewing, discussing and finalizing" fraudulent public filings (See
23

24  _____

25  and/or disseminating the false and misleading statements,' and that they 'participated in drafting,
    preparation and/or approval of the various public and shareholder and investor reports'" were
26  insufficient).

27         [6] Paragraph 31 of the Complaint identifies various nondisclosures regarding the City pension
    system including projections regarding future unfunded liability, future annual pension contributions
28  and future retiree healthcare liability. ¶ 31(a) - (e).

08CV0625

1  *SEC v. Berry, supra*).    The allegations contained in the Complaint indicate that Ms.

2  WEBSTER did nothing more than present information that had been prepared by other city

3  officials (¶ 40).    There are no specific misstatements attributed directly to Ms. WEBSTER

4  during the course of the presentations or in the "fielding" of unidentified "questions."

5      The conclusory allegations regarding the rating agency presentations by Ms.

6  WEBSTER fall short of alleging fraudulent misstatements with the requisite particularity

7  required by Rule 9(b).    These allegations must be dismissed.

8  **C.    Actuarial Pension Projections And Future Retiree Healthcare Liabilities Are Nondisclosable And Immaterial As A Matter Of Law**

9

10      The SEC admits that the City's bond offering documents, continuing disclosures and

11  rating agency presentations included "certain information" about the City's then current

12  unfunded liability and funded ratio (of the City pension fund).    Complaint; ¶ 30[7] However,

13  it is the position of the SEC that these disclosures "omitted" other material information

14  regarding the "looming financial crisis" facing the City based upon the City's actuarial

15  projections regarding future pension obligations and future retiree healthcare obligations.[8]

16  These projections were nondisclosable in municipal financial reports and securities offerings

17  as a matter of law during the applicable time frame.

18      Additionally, these projections were highly speculative and, as such, immaterial and

19  nondisclosable as a matter of law. Nondisclosure of actuarial projections pertaining to future

20  pension and healthcare liabilities can not provide the basis for a nondisclosure fraud action.

21  **1.    Future Retiree Health Care Liabilities Were Nondisclosable And Immaterial As A Matter Of Law**

22      The Complaint alleges the City's failure to disclose future retiree healthcare liabilities

23  to be material omissions in its bond offering documents.  However, in 2002 and 2003, there

24  was no legally cognizable duty for any municipality to disclose potential future retiree health

25

26  _____

27  [7] In fact, the "certain information" provided regarding the financial status of the retirement fund was entirely accurate and complied with GASB reporting requirements at that time.

28  [8] See ¶¶ 31(a), (b), (c), (d), (e) and 32 (c), (d), (e), and (g).

1    care liability. No such duty, at that time, had ever been imposed on any government, state

2    or local. It was not until 2004 that the Governmental Accounting Standards Board ("GASB")

3    issued new accounting standards for local public agencies requiring such disclosures - as the

4    result of a growing concern that public agencies were not recognizing the total cost of

5    promised post-employment health benefits for retired employees, and thus not addressing the

6    potential impact of these growing liabilities on future cash flow. This new accounting

7    standard, GASB 45, required public agencies to conduct regular actuarial studies to

8    determine the actuarial accrued liability for retiree health benefits. However, GASB 45 did

9    not take effect for Phase One governments (those with total annual revenues of $100 million

10   or more - which includes the City of San Diego) until the reportable period beginning after

11   December 15, 2006. Thus, there was no requirement for the City to report future retiree

12   health care liabilities until fiscal year 2008.[9]

13          At the time of the offerings by the City of San Diego, there was absolutely no

14   requirement for the City to calculate, report or fund future retiree health care liabilities. The

15   City was only required to accurately report its current status, which it did. The manner and

16   amount of the payment for retiree healthcare was accurately reported in the City's CAFRs

17   and Post Retirement Health Insurance footnotes, and these disclosures clearly laid out the

18   fact that the retiree health care obligation was increasing annually. Any further projection,

19   at that time, was not required and immaterial as a matter of law. The SEC cannot base a case

20   of material omissions upon the failure to include such projections in its offering documents,

21   where there was no duty to disclose. *See, e.g., In re Lyondell Petrochemical Co. Securities*

22   *Lit.*, 984 F.2d 1050, 1052-53 (9th Cir. 1993) (securities action based on omission fails where

23   there is no duty to disclose).

24          Notably, the City CAFR for 2003, released for publication in October 2006, discusses

25   retiree healthcare in footnote 13. However, it contains no actuarial projection of future

26   _____

27   [9] Additionally, GASB 45 does not require municipalities to fund future retiree health care on
an actuarial basis; municipalities may continue the "pay as you go" method as long as it is accurately
28   reported.

-9-                                        08CV0625

1    healthcare liability despite the ongoing SEC investigation at that time.[10] It further notes that

2    the recently issued GASB Statement No. 45 will not be implemented until the fiscal year

3    ending June 30, 2008.  In January 2007, the San Diego Office of the Independent Budget

4    Analyst ("IBA") issued a report, IBA, Report No.: 07-12 (January 22, 2007) (Exhibit 1),

5    reviewing the City of San Diego's financial outlook.  The IBA Report noted:

6           The IBA concurs with a plan to begin pre-funding the retiree
             health liability.  As we emphasize in IBA Report 06-18, it is
7           expected that municipalities will begin to address these
             liabilities in some manner, not just report them as required by
8           GASB.  Since the GASB requirement is just taking effect and
             most municipalities have not yet valued their liability, or begun
9           pre-funding yet, there is little in the way of best practices,
             industry standards or advisory recommendations to guide the
10          City of San Diego in implementing a prudent plan to pre-fund
             this liability. *Id.* at 7.
11

12    Nondisclosable retiree healthcare projections can not be the basis for fraud allegations.

      **2.    Actuarial Projections Are Immaterial And Nondisclosable As A**
13          **Matter Of Law**

14          Actuarial valuation is a complex, mathematical "science" that relies on a number of

15    variable and ever-changing assumptions.  "In practice, the actuarial valuation of a [pension]

16    fund is an ongoing endeavor, requiring complex assumptions about a number of variables,

17    as well as regular corrections based on actual experience." *In re Horton*, 88 Ops. Cal. Atty.

18    Gen., *3 (2005) (Opinion No. 04-710).[11]  Due to this complexity, and "fluctuations in market

19    performance, unexpected rates of employee turnover, and unforseen increases in salary or

20    in purchases of service credits," actuarial valuations are "imperfect" and actual experience

21    will often not follow actuarial assumptions. *Id.*

22          Case law mandates that projections, estimates, and other subjective information must

23    be **reasonably certain** before management may release them to the public.  *Panter v.*

24    *Marshall Field and Co.*, 646 F.2d 271, 292 (7th Cir. 1981); *see also, James v. Gerber*

25

26          [10] In fact, no City CAFR to this date has reported future retiree healthcare liabilities; it is not
27    required until the FY 2008 CAFR.

28          [11] *See, e.g., In re Retirement Cases* (2003) 110 Cal.App.4th 426, 457-460.

1  *Products Co.*, 587 F.2d 324 (6ᵗʰ Cir. 1978) (earnings figures only material when calculated

2  with <u>substantial certainty</u>). In *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214 (9ᵗʰ Cir. 1980), the

3  Ninth Circuit, after noting that the Commission does not require companies to disclose

4  financial projections, suggested that internal projections lacking in reasonable certainty

5  should not be disclosed to the public. *Id.* at 1221. The Ninth Circuit stated: "It is just good

6  general business practice to make such projections for internal corporate use. There is no

7  evidence, however, that the estimates were made with such reasonable certainty even to

8  ***allow*** them to be disclosed to the public." *Id.* (emphasis added). *See also, "Disclosure of*

9  *projections of future economic performance,"* 38 Fed. Reg. 7220 (1973) (the Commission

10  does not require public companies to disclose financial projections); *Freeman v. Decio*, 584

11  F.2d 186, 199-200 (7ᵗʰ Cir. 1978) (financial projections are not material information in an

12  insider trading action); *Marsh v. Armada Corp.*, 533 F.2d 978, 987 (6ᵗʰ Cir.) (disclosure of

13  projections not required under 10b-5 in merger proxy statement), *cert. denied*, 430 U.S. 954

14  (1977).

15       In *Walker v. Action Industries, Inc.*, 808 F.2d 703 (4ᵗʰ Cir. 1986), the Fourth Circuit,

16  in a case of first impression, considered the issue of "whether there is a duty to disclose

17  financial projections." The Court analyzed the approach of other Circuits which had

18  addressed the issue and noted:

19       "A third approach has been adopted by the Sixth Circuit. It has ruled that there
         is no duty to disclose financial projections unless they are "substantially
20       certain." *See Starkman v. Marathon Oil Company*, 772 F.2d at 241-42 (rule
         10b-5 claim for material omissions in press release designed to thwart tender
21       offer); *James v. Gerber Products Co.*, 587 F.2d 324, 327 (6ᵗʰ Cir. 1978) (rule
         10b-5 claim for failure to disclose in connection with shareholder's sale of
22       stock back to issuing company); *see also Radol v. Thomas*, 772 F.2d 244, 252-
         53 (6ᵗʰ Cir. 1985); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 216 (6ᵗʰ Cir.
23       1984). While the Sixth Circuit's "substantially certain" test appears similar to
         the "case by case" approach announced by the Third Circuit in *Flynn*, the Sixth
24       Circuit has rejected *Flynn* as, among other things, "uncertain and
         unpredictable." *Starkman*, 772 F.2d at 242. It should also be noted that the
25       Sixth Circuit, in applying its "substantially certain" test, has yet to impose a
         duty to disclose financial projections in any case.
26
         The Ninth Circuit appears properly categorized with the Sixth. In *Vaughn v.*
27       *Teledyne, Inc.*, the Ninth Circuit found **no duty to disclose financial**
         **projections** where there was "**no evidence** ... that the estimates were made
28       with ... **reasonable certainty**." 628 F.2d 1214, 1221 (9ᵗʰ Cir. 1980) (rule 10b-

- 11 -

1  5 and § 14(e) claim for material omissions in tender offer statement); *see also*
   *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265,
2  1272 (9th Cir. 1982) (no duty to disclose "subjective" asset appraisals; rule
   14a-9 claim for material omissions in proxy statement)." *Id.* at 708-709.
3  (Emphasis supplied.)

4       The City Retirement System (SDCERS) performs annual actuarial valuations of the

5  pension fund, as required by the San Diego City Charter and Municipal Code, through its

6  actuary, and presents these actuarial valuations in an annual valuation report.  These

7  valuations of the concluded fiscal year were performed by SDCERS, and were accurately and

8  appropriately reported in the City CAFRs and bond offering documents.  The SDCERS

9  actuarial valuations are not the focus of the SEC allegations regarding nondisclosure of

10 pension fund information.  The SEC Complaint alleges failure of the City to disclose the

11 result of actuarial **projections** regarding the pension fund, i.e., internal projections conducted

12 by the City to assist in predicting future fiscal policy.

13      In *In re Lyondell Petrochemical Co. Securities Lit.*, *supra*, the Ninth Circuit discussed

14 the desirability of a public policy which allows entities to perform internal business

15 projections without the necessity of disclosure.  The court noted that "[a] corporation may

16 be called upon to make confidential projections for a variety of sound purposes where public

17 disclosure would be harmful...A far-reaching disclosure requirement might not be in the best

18 interests of the market, the corporation's legitimate business plans and, ultimately,

19 investors... ." *In re Lyondell Petrochemical Co. Securities Lit.*, *supra*, at 1052-53. Requiring

20 municipalities to publicly disclose the results of all in-house projections, whether best-case

21 or worst-case scenarios, would not be in the best interest of the City or the market and may

22 have a detrimental and chilling impact on the willingness of municipalities to engage in the

23 performance of such projections or models.

24      The "imperfection" of actuarial projections, as emphasized by the courts, is

25 particularly obvious when one considers that the City has now rejected their accuracy.  In

26 recent litigation in *San Diego Police Officers' Ass'n v. Aguirre*, Case No. 05CV1581-H,

27 United States District Court, Southern District of California, the City argued in its Motion

28 for Partial Summary Judgment:

- 12 -

08CV0625

The funding component of MP2 did not render the pension system actuarially unsound to such a degree that any benefits to which SDCERS beneficiaries lawfully are entitled are in danger of going unpaid ... The undisputed evidence further establishes that the *total* amount of underfunding attributable to the City contribution rate stabilization plan contained in *both* MP1 and MP2 is less than $150 million. Such a relatively small amount could not in and of itself render SDCERS actuarially unsound - and, indeed, it already has been rectified in the *McGuigan* settlement.

Moreover, the SDCERS actuary recently has concluded that SDCERS is able to pay all current beneficiaries, and is capable of servicing planned pension obligation debt to cover any presently accrued liabilities. Remarkably, as of June 30, 2006, the SDCERS funding ratio reportedly is 79.9%, a funding level which is well-above the "at-risk" funding ratio guidelines contained in the recently enacted Pension Protection of 2005. *See* 26 U.S.C. § 430(I). Thus, as a matter of federal law, by its own accounting, SDCERS presumptively is not actuarially-unsound, and most importantly for constitutional purposes, fully capable of paying benefits when due.[12]

In sum, due to their highly speculative nature, the actuarial **projections** performed by the SDCERS' actuary for internal use in 2003 that indicated *potential* future liabilities, were nondisclosable and immaterial as a matter of law. Moreover, history has proven the highly speculative projections contained within the SEC allegations (¶¶ 15; 31(a), (c), and (e)), to be grossly inaccurate. Actuarial projections regarding future pension funding levels are uncertain, untrustworthy and highly speculative. The only certainty regarding these highly unpredictable projections is that they will be proven wrong one hundred percent of the time. Such speculation can never satisfy the Ninth Circuit "reasonable certainty" standard of materiality and, therefore, can not be the basis for a material nondisclosure action as a matter of law.

Finally, with regard to disclosure of actuarial pension fund projections, there was no duty to disclose pension projections under GASB in 2002 or 2003. In fact, only recently, in an attempt to align the financial reporting requirements for pensions with those for other post employment benefits (OPEB), i.e., retiree healthcare, has GASB required defined benefit

---

[12] Memorandum of Points and Authorities in Support of Motion by Defendants City of San Diego, et al., for Partial Summary Judgment Regarding Pension Underfunding Claims, *San Diego Police Officers' Ass'n v. Aguirre*, Case No. 05CV1581-H-POR, filed March 12, 2007, pp. 20-21. (Exhibit 2)

08CV0625

pension plans and employers to include pension information in notes to financial statements. *See GASB Statement No. 50, Pension Disclosures* ("GASB 50"). GASB 50 which created new reporting standards for pension funding notes, became effective for reporting periods after June 15, 2007. Importantly, GASB Statement No. 50 was not in effect in 2002 and 2003. The City offering documents complied with all GASB disclosure requirements pertaining to pensions at that time. Of equal importance is the fact that the new reporting requirements of GASB 50 do not require the disclosure of pension fund projections into the future; only certain ascertained information from actuarial valuations are required to be disclosed.

The SEC, in this Complaint, has manufactured disclosure requirements for pension fund information that were nonexistent at the time of these City offerings, and, in fact, do not even exist to this day. The SEC is attempting to hold these defendants to standards of disclosure which have never been applied to municipalities or their officials. Nondisclosure of actuarial pension fund projections can not be the basis for an action based on alleged material nondisclosures.

**D.    Substantial Portions Of The Requested Relief Are Precluded By The Statute Of Repose**

The statute of repose, 28 U.S.C. § 2462, states that "an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first occurred..." The court in *SEC v. Berry, supra*, analyzed the section 2462 repose period and determined that all civil penalties are barred for "conduct occurring more than five years before the complaint was filed." The Complaint in this action was filed on April 7, 2008. Thus, no civil "penalty" may be imposed for "conduct" of Ms. WEBSTER which occurred before April 8, 2003.

Once again, the allegations in the Complaint pertaining to Ms. WEBSTER are lacking in specificity. In this regard, there is no "when" as to the allegation that Ms. WEBSTER "reviewed" the "relevant disclosures in appendix B, including the pension footnotes..." (¶

39.) There is no allegation this conduct occurred on or after April 8, 2003, to bring it within the necessary statutory time frame. No penalty may be imposed on Ms. WEBSTER for her "review" of the alleged misstatements in appendix B.

Defendant WEBSTER joins, adopts in its entirety, and incorporates by reference, the argument proffered on behalf of Defendant Mary E. Vattimo regarding the statute of repose.

**E.    The Alleged Omissions Regarding The City's Pension Fund And Retiree Health Care Obligations Are Patently Irrelevant To An Investor In Tax Anticipation Notes**

Defendant WEBSTER joins, adopts in its entirety, and incorporates by reference, the argument proffered on behalf of Defendant Mary E. Vattimo.

**F.    Legislative Immunity Requires Dismissal Of The Complaint In Its Entirety**

Defendant WEBSTER joins, adopts in its entirety, and incorporates by reference, the argument proffered on behalf of Defendant Michael T. Uberuaga.

## II.

## CONCLUSION

The SEC has spent over four years investigating the City of San Diego, it officials, and its bond offerings for 2002 and 2003. Despite this lengthy and thorough undertaking, the SEC remains unable to plead any specific facts regarding defendant TERESA WEBSTER which would allow for this action to proceed against her. For the above-mentioned reasons, the Complaint against defendant WEBSTER should be dismissed with prejudice.

Respectfully submitted,

Dated: September 8, 2008

s/Frank T. Vecchione
FRANK T. VECCHIONE
Appearing specially for Defendant
TERESA A. WEBSTER
Email: ftvlaw@aol.com

- 15 -

08CV0625